Mary Lou CLARKE et al.

v.

David RAPOSA, in his capacity as a member of the Tiverton Water Authority and the Town of Tiverton.

Mary Lou CLARKE et al.

v.

James P. AMARANTES, in his capacity as Treasurer of the Town of Tiverton.

No. 97–86—Appeal.

Supreme Court of Rhode Island.

May 15, 1998.

Thomas T. Brady, Tiverton, for Plaintiff.

Anthony G. Quentin, Michael DeSisto, Providence, Kenneth R. Tremblay, Portsmouth, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeal of David Raposa et al in their capacity as members of the Tiverton Water Authority and on the appeal of James P. Amarantes in his capacity as treasurer of the town of Tiverton from a judgment entered in the Superior Court pursuant to G.L.1956 § 9–30–2 (Declaratory Judgment Act). The plaintiffs, Mary Lou Clarke (Clarke), Mary C. Roach (Roach), W. Nancy Brady and Arcee, Inc. had brought this declaratory judgment action, seeking a declaration from the Superior Court that the Tiverton Water Authority (TWA) lacked authority to assess taxes and further lacked the authority to impose various fees and assessments upon the plaintiffs for the use of water, installation of service, and individual water meters for commercial tenants. A justice of the Superior Court entered judgment, holding that the TWA had no authority to assess taxes and had no authority to impose the challenged fees and assessments. The judgment also required the repayment of taxes that had been paid by the plaintiffs and further required the repayment of fees and assessments in the total sum of $30,371.44 including interest and costs. The facts of the case insofar as pertinent to this appeal are as follows.

A special act of the General Assembly, P.L.1975, ch. 116, created the TWA. The statute established a nine-member board of water commissioners that it authorized to construct, operate, maintain, and improve a water system for all areas of the town outside the geographical boundaries of the North Tiverton and Stonebridge fire districts. The TWA became operational after the Tiverton financial town meeting approved the issuance of a general-obligation bond to finance the creation of a water system. The authority began its operation in 1987 after the approval of the bond issue. In order to fund its operations and to finance the payment of the bonded indebtedness, the TWA

imposed a tax against properties within 1,000 feet of its water distribution lines. It also imposed assessments against commercial users of its water system at the rate of $1,000 per inch of pipe diameter. The TWA also required plaintiffs to provide individual meters in those areas occupied by tenants in their multiunit commercial building. One of these units was occupied by plaintiff Arcee, Inc., which was the corporate name of a restaurant operated by plaintiffs Clarke and Roach. The other units were rented or offered for rent to third parties.

After a nonjury trial, a justice of the Superior Court made the following legal determinations.

1. The enabling statute did not confer upon the TWA any power to assess taxes, whether within 1,000 feet of its water line or otherwise.

2. General Laws 1956 § 44–5–26, which provides a remedy for relief from illegal or excessive imposition of taxes by a municipality, does not apply to the purported invalid assessment of taxes by the TWA. Therefore, plaintiffs' seeking of declaratory, injunctive, and other relief through a declaratory judgment proceeding was appropriate and proper.

3. The requirement that plaintiffs install individual water meters in its commercial units was inconsistent with its own rules and regulations then in effect. The regulations had no provision requiring commercial rental units to have individual meters.

4. There was no legal basis for the imposition of a commercial-development fee.

5. The plaintiffs were entitled to be reimbursed for all taxes paid for assessments charged for commercial development and for the expenses of installing individual water meters.

On appeal both the TWA (which is now inoperative) and the town of Tiverton do not challenge the trial justice's legal determinations in respect to the TWA's power to tax, to impose commercial-development fees, or to require installation of individual water meters. We are persuaded that the trial justice was correct in holding that §§ 44–5–26 and 44–5–27 were inapplicable to the present case. Those sections only relate to a municipality or other agency that has the power to tax.

The TWA and the town do, however, challenge the trial justice's requirement that they reimburse plaintiffs for their payment of taxes, development fees, and water-meter-installation costs, on the ground that these payments were made voluntarily. The plaintiffs in their brief have vigorously asserted that their payments were not voluntary even though no written protests accompanied the various payments. The plaintiffs suggested that the voluntary-payment defense was not raised before the Superior Court. However, at oral argument it was asserted that the voluntary-payment defense was raised in a post-trial memorandum filed by the TWA. Apparently the TWA did not assert the defense of voluntary payment in the answer filed by its members.

The plaintiffs at oral argument did not deny that the issue of voluntary payment was set forth in a post-trial memorandum filed by the TWA but argued that both the tax payments and the commercial-development payments, including the meter charges, were paid in coercive circumstances that would overcome any argument that the payments were voluntary.

A reading of the bench decision of the trial justice discloses that she did not address the issue of voluntary payment. We are of the opinion that since this is now the sole defense raised by the TWA and the town, the issue should be addressed in the first instance by the trial justice in order that she might make the necessary factual determinations that would underlie the acceptance or the rejection of this defense.

We therefore remand this case to the trial justice so that she may address and determine the issue of the voluntariness of the payments made by the plaintiffs in respect to taxes, commercial-development fees, and the cost of installing separate water meters. In the event that any party is aggrieved by the trial justice's determination of this issue, that party may then appeal such determination to this court. The papers in the case may be remanded to the Superior Court so that the

trial justice may address and determine the issue of alleged voluntary payment on the part of the plaintiffs.